IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LANELOGIC, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-1164-BD |
| | § | |
| GREAT AMERICAN SPIRIT | § | |
| INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

In this insurance coverage dispute removed to federal court on the basis of diversity of citizenship, Plaintiff lanelogic, Inc. ("lanelogic") and Defendant Great American Insurance Company ("Great American") have filed separate motions to compel discovery. At issue is whether certain documents withheld from production constitute privileged attorney-client communications, work product, or both. Defendant also seeks an order permitting the inspection of plaintiff's electronic records and inventory management system. For the reasons stated herein, plaintiff's motion is granted in part and defendant's motion is denied.

I.

A brief overview of the facts of this case and the claims of the parties is necessary to the disposition of the pending motions. This lawsuit arises out of a failed business venture by plaintiff to operate a sophisticated on-line trading network for used vehicles. Under the program, plaintiff facilitated the redistribution of vehicles among its member dealers, and provided a buy-back guarantee to repurchase any vehicle the dealer could not sell within 45 days. To protect it from losses incurred under the buy-back guarantees, plaintiff purchased an insurance policy from

defendant. When plaintiff's business failed in March 2008, it submitted more than 1,700 claims under the insurance policy. The combination of plaintiff's sudden demise and the significant increase in claims made defendant suspicious of fraud or other wrongdoing. After purportedly conducting a thorough investigation, defendant denied most of the claims. Plaintiff then filed this lawsuit for breach of contract and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Defendant asserts numerous affirmative defenses and counterclaims, including rescission, fraud, and negligent misrepresentation.[1]

As part of discovery in this case, plaintiff asked defendant to produce "all investigative, coverage or claims related documents[.]" (*See* Jt. Stat. Rep. at 2). Defendant asked for communications between plaintiff and its third-party lender, HBK Investments, L.P. ("HBK"). (*See id.* at 19). Each party contends that documents requested by the other party are protected from disclosure by the attorney-client privilege and/or the work product doctrine. To support their objections, plaintiff and defendant have prepared privilege logs identifying the documents withheld from production, submitted evidence in the form of affidavits, and tendered certain documents to the court for an *in camera* review. The parties have briefed their respective positions in a joint status report filed on April 1, 2010, and the motions are ripe for determination.

II.

Defendant contends that an unspecified number of documents withheld from production constitute privileged attorney-client communications, work product, or both. Plaintiff argues that the attorney-client privilege, as extended by the "common interest" doctrine, protects from disclosure 10 documents on its privilege log. The court will examine these privilege claims separately.

---

[1] Plaintiff has filed a Rule 12(b)(6) motion to dismiss seven of the 10 counts of Defendant's First Amended Counterclaim. That motion is currently pending before the court.

...

A.

The attorney-client privilege serves to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). This privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.*, 101 S.Ct. at 682, *quoting Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Hence, the privilege does not protect documents and other communications simply because they result from an attorney-client relationship. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) (Kaplan, J.). Moreover, courts generally construe the privilege narrowly because "assertion of privileges inhibits the search for truth." *Id., quoting Perkins v. Gregg County*, 891 F.Supp. 361, 363 (E.D. Tex. 1995).

Under Texas law, which governs the resolution of privilege issues in this diversity case,[2] the elements of the attorney-client privilege are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. TEX. R. EVID. 503(b);

---

[2] Fed. R. Evid. 501 provides, in pertinent part:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501.

*see also Navigant Consulting*, 220 F.R.D. at 473 (citing cases). The burden is on the party asserting the privilege to demonstrate how each document or communication satisfies these elements. *Navigant Consulting*, 220 F.R.D. at 473. A general allegation of privilege is insufficient to meet this burden. *Id.* Instead, "a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection." *Id., quoting Caruso v. The Coleman Co.*, Civ. A. No. 93-CV-6733, 1995 WL 384602 at *1 (E.D. Pa. Jun. 22, 1995). The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. *Id.* Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Id., quoting Pippenger v. Gruppe*, 883 F.Supp. 1201, 1212 (S.D. Ind. 1994). "[R]esort to an *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible." *Id.* at 474, *quoting Caruso*, 1995 WL 384602 at *1 (emphasis in original).

1.

Defendant argues that thousands of pages of documents withheld from discovery are protected by the attorney-client privilege because the documents were prepared by the Dallas law firm of Strasburger & Price, LLP ("the Strasburger firm") for the purpose of providing legal advice to defendant regarding its obligations under the insurance policy. (*See* Jt. Stat. Rep. at 13, 15). Plaintiff responds that none of the materials are privileged because they were made for the ordinary business purpose of adjusting claims. (*Id.* at 6-7). Even if the privilege applies to some documents or parts thereof, plaintiff contends that defendant has failed to demonstrate that each document withheld from discovery satisfies the elements of the privilege. (*Id.*).

The court agrees that, despite its prolix submissions, defendant has failed to adduce sufficient evidence to establish its claim of privilege. Significantly, defendant has not shown how the attorney-client privilege applies to *each* document withheld from production. Instead, defendant offers only its more than 200-page privilege log and the blanket assertion by its claims manager, Jo Ann Lovensheimer, that "[a]ll the documents identified on the Privilege Logs as to which the 'Attorney-Client Privilege' is asserted, as indicated therein, contain or constitute confidential communications made for the purpose of facilitating the rendition of professional legal services to Great American[.]" (Def. Jt. Stat. App., Exh. 1, Lovensheimer Aff. at 9-10, ¶ 21). Although the Lovensheimer affidavit provides significant details about the facts and circumstances surrounding defendant's investigation and handling of the claims at issue, it wholly fails to explain how these facts bring any particular document -- or even categories of documents -- within the scope of the attorney-client privilege. Nor does Lovensheimer state, much less establish, that the privilege has not been waived. Instead, defendant merely assumes that all documents relating to its handling of plaintiff's claims are protected from disclosure because they were made by or sent to counsel after Great American had determined it needed legal advice pertaining to coverage or at a time when it was considering possible litigation. Such a categorical approach to privilege issues is improper. *See Navigant Consulting*, 220 F.R.D. at 474; *Jacobs v. Tapscott*, No. 3-04-CV-1968-D, 2006 WL 1140460 at *2 (N.D. Tex. May 1, 2006) (Kaplan, J.).

Notwithstanding this failure of proof, which alone would justify overruling defendant's objections, the court has examined a sampling of documents from defendant's extensive privilege log in an attempt to glean information that might shed additional light on the privilege issues in this case. Some of the documents clearly are not privileged. For example, GAIC Docs. 15596-15603 & 18094-18097 are transmittal emails forwarding articles of interest regarding plaintiff and contain

no confidential information. *See Jacobs*, 2006 WL 1140460 at *2 (copies of statutes and case law, transmittal letters, and fax cover sheets contain no confidential information and clearly are not privileged). However, in most instances, the court has been left to speculation and guess-work in interpreting the documents. *See Navigant Consulting*, 220 F.R.D. at 474, *citing Pippenger*, 883 F.Supp. at 1212 (attempt to determine existence of privilege absent adequate factual foundation wastes judicial time and resources). Without evidence explaining these documents and how the information contained therein is confidential and communicated for the purpose of obtaining legal advice, defendant cannot prove that any of the documents are privileged.[3]

2.

Plaintiff and HBK have withheld 10 documents on the grounds of attorney-client privilege, as extended by the "common interest" doctrine. The "common interest" doctrine is not an independent privilege. *See In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 922 (Tex. App.-- Dallas 2006). Rather, it is a common law extension of the attorney-client privilege that serves to protect privileged communications that are shared with a third party who has a common legal interest with respect to the subject matter of the communication. *Id.*, *citing In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992) ("[T]he 'common-interest' privilege is a part of the attorney-client privilege.").

A review of the affidavits and other evidence submitted by plaintiff and HBK, as well as an *in camera* review of the documents themselves, reveals that the disputed documents consist of e-mail communications by and between Jim O'Brien or Bruce Thompson, officers of lanelogic, and Richard Enthoven, a consultant hired by HBK. (*See* Plf. Jt. Stat. Rep. App., Enthoven Decl. at 1, ¶ 3). Rod

---

[3] To the extent defendant relies on *Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455, 457-58 (1982), such reliance is misplaced. (*See* Jt. Stat. Rep. at 11-12). *Blackmon* holds that a party is not entitled to discover otherwise privileged claims investigation materials merely by alleging that the insurer acted in bad faith. *See Blackmon*, 639 S.W.2d at 458. Unlike *Blackmon*, defendant has failed to prove that any of the documents withheld from discovery are privileged in the first instance.

Jones, a director of lanelogic, and Leslie Kahan, an attorney hired by HBK, were copied on eight of the 10 e-mails. (*See id.* at 4, ¶ 6 & 4, ¶¶ 8-9). One of the e-mails was also sent to David White, CFO of lanelogic, and Jeff Estes, a principal at HBK. (*Id.* at 4-5, ¶ 12). Plaintiff and HBK were co-insureds under the insurance policy at issue in this case. Together, they shared a common legal interest with respect to preserving and maximizing the proceeds available under the insurance policy. The emails in dispute contain legal advice and discuss legal options and strategies pertaining to the policy. The communications were clearly meant to be confidential and not shared with defendant. Thus, the court has little difficulty concluding that the documents withheld by plaintiff are protected by the attorney-client privilege, as extended by the "common interest" doctrine.

In an attempt to defeat the privilege, defendant argues that the "common interest" doctrine applies only in situations where a "palpable threat of litigation" existed at the time the documents were created. (*See* Jt. Stat. Rep. at 19). Although this argument was endorsed by the Fifth Circuit in *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002), a criminal case arising under federal law, Texas courts do not impose such a requirement on the "common interest" doctrine. *See In re JDN*, 211 S.W.3d at 923 ("common interest" doctrine applies even in absence of anticipation of litigation). Texas law, not Fifth Circuit precedent, governs the resolution of privilege issues in this diversity case. *See* FED. R. EVID. 501. Defendant also attempts to distinguish this case from *In re JDN* on the ground that plaintiff and HBK did not share counsel at the time the documents were created. However, only a common interest--not joint representation--is required for the doctrine to apply. In sum, none of the documents withheld by plaintiff are discoverable.

### B.

The court next considers whether the documents withheld by defendant are entitled to work product protection. The federal work product doctrine, as codified in Fed. R. Civ. P. 26(b)(3),

provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." FED. R. CIV. P. 26(b)(3).[4] Determining whether a document is prepared in anticipation of litigation is a "slippery task." *Mims v. Dallas County*, 230 F.R.D. 479, 483 (N.D. Tex. 2005) (Kaplan, J.), *citing United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), *cert. denied*, 104 S.Ct. 1927 (1984). A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection. *Id.* However, "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. *In re Kaiser Aluminum & Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1354 (2001); *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir.), *cert. denied*, 102 S.Ct. 320 (1981). As the 1970 advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." FED. R. CIV. P. 26, adv. comm. notes (1970); *see also El Paso Co.*, 682 F.2d at 542. Among the factors relevant to determining the primary motivation for creating a document are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Navigant Consulting*, 220 F.R.D. at 477, *quoting Electronic Data Systems Corp. v. Steingraber*, No. 4-02-CV-225, 2003 WL 21653414 at *5 (E.D. Tex. Jul. 9, 2003). If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation. *Id.*

---

[4] Work product is not a substantive privilege within the meaning of Rule 501. *Seibu Corp. v. KPMG LLP*, No. 3-00-CV-1639-X, 2002 WL 87461 at *4 (N.D. Tex. Jan. 18, 2002) (Kaplan, J.). Therefore, the resolution of this issue is governed by federal law. *Id.*

Plaintiff contends that the documents at issue were created by defendant to determine whether coverage existed under the policy and, thus, were made for an ordinary business purpose rather than in anticipation of litigation. "[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." *Douga v. D & A Boat Rentals, Inc.*, No. Civ. A. 04-1642, 2007 WL 1428678 at *4 (W.D. La. May 10, 2007), *quoting Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ. A. 99-3759, 2000 WL 1145825 at *2 (E.D. La. Aug. 11, 2000). "[E]ven though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection." *Piatkowski*, 2000 WL 1145825 at *2, *citing Amak Food Corp. v. The Travelers Co.*, No. 80-5753, slip op. at 2 (S.D.N.Y. Apr. 27, 1981) *and Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 118 (N.D. Ga. 1972). In the context of an insurance dispute, the question of whether documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation. *See U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007).

In an attempt to establish that the documents withheld from discovery constitute work product, defendant relies primarily on its privilege log and the Lovensheimer affidavit, which states that "[a]ll the documents identified on the Privilege Logs as to which the 'Work Product' doctrine is asserted, as indicated therein were created on or after April 25, 2008[ ], and the primary motivating purpose for the creation of such documents was to aid in possible future litigation, and after June 9, 2008, also to prepare for the trial of this lawsuit." (Def. Jt. Stat. Rep. App., Exh. 1, Lovensheimer Aff. at 10, ¶ 22). Notwithstanding this self-serving testimony, other evidence suggests that litigation concerns were not the primary motivating purpose behind the creation of the documents at issue. Significantly, Lovensheimer herself explains that defendant retained the Strasburger firm as

"coverage counsel" to provide legal advice regarding "potential coverage issues." (*Id.*, Lovensheimer Aff. at 7, ¶ 16). Lovensheimer also confirms that, from and after April 25, 2008 -- the date defendant allegedly first anticipated litigation with plaintiff -- the Strasburger firm provided significant legal advice on potential coverage issues. (*Id.*, Lovensheimer Aff. at 8, ¶ 19). None of the evidence submitted by defendant permits the court to determine how any particular document was prepared "in anticipation of litigation," as opposed to having been prepared to assist Great American with its coverage determination. To the contrary, several documents reviewed by the court *in camera* appear to have been prepared in the ordinary course of business or primarily for the purpose of assisting defendant with its coverage determination, even after defendant began to anticipate litigation. (*See, e.g.* GAIC Docs. 19789-19801, 19860-19872, 23177-23180, 23824-23835, 25021-25022). Thus, defendant has failed to establish that the documents listed on its privilege log are protected by the work product doctrine. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 638 (N.D. Iowa 2000) (denying work product protection to claims investigation materials created as part of coverage determination); *see also HSS Enterprises, LLC v. Amco Ins. Co.*, No. C-06-1485-JPD, 2008 WL 163669 at *6 (W.D. Wash. Jan. 14, 2008) (documents generated by attorneys investigating coverage issues were not shielded by work product doctrine).

Although defendant has failed to establish that any particular document or category of documents withheld from discovery was prepared primarily "in anticipation of litigation," at least one document reviewed by the court, GAIC Doc. 23824-23835, contains a paragraph that reflects the mental processes of counsel bearing on litigation strategy, which is not discoverable, in addition to information pertaining to coverage, which is discoverable. *See In re Int'l Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (suggesting that "the mental impressions, conclusions, opinions, or legal theories of an attorney" are entitled to almost absolute protection).

Undoubtedly, other documents not produced to the court contain similar "core" work product. To protect against the unwarranted disclosure of such information, the court determines that defendant should be allowed to redact from documents produced to plaintiff any statements revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy. *See HSS Enterprises*, 2008 WL 163669 at *6 (where documents contained both coverage investigation information and counsel's mental processes bearing on trial strategy, defendant was allowed to redact the latter from documents produced to plaintiff).

C.

Finally, defendant argues that it is entitled to inspect plaintiff's electronic records and inventory management system ("IMS") because such a system allegedly was used to determine which vehicles were sent to member dealers and to calculate the repurchase guarantee that plaintiff offered to dealers. (*See* Jt. Stat. Rep. at 22). Most courts are reluctant to authorize direct access to an opposing party's electronic storage device. "As a threshold matter, the requesting party must show that the responding party has somehow defaulted in its obligation to search its records and produce the requested data." *In re Weekley Holmes, L.P.*, 295 S.W.3d 309, 317 (Tex. 2009) (citing cases). "The requesting party should also show that the responding party's production 'has been inadequate and that a search of the opponent's [electronic storage device] could recover deleted relevant materials.'" *Id., quoting Diepenhorst v. City of Battle Creek*, No. 1-05-CV-00734, 2006 WL 1851243 at *3 (W.D. Mich. Jun. 30, 2006); *see also* Fed. R. Civ. P. 34, adv. comm. notes (2006) (noting that there is no "routine right of direct access to a party's electronic information system" and advising courts to "guard against undue intrusiveness" resulting from inspecting such systems). Even if this threshold showing is made, only a qualified expert should be given access to an opponent's electronic storage device. *Weekley Homes*, 295 S.W.3d at 318 (citing cases).

Here, defendant has failed to allege, much less prove, the existence of any circumstances that would justify the intrusiveness of direct access to plaintiff's electronic records and IMS. The court therefore denies this discovery request.

## CONCLUSION

Plaintiff's motion to compel [Doc. #69] is granted in part and defendant's motion to compel [Doc. #71] is denied. All documents withheld by defendant shall be produced to counsel for plaintiff by **May 27, 2010.** However, defendant may redact from those documents any statements revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy.

SO ORDERED.

DATED: May 6, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE